## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 19-CV-24594-MORENO/LOUIS

RAMONA KEMPER,

      Plaintiff,

vs.

ANDREW SAUL,
Commissioner of Social Security Administration,

      Defendant.

_____/

## REPORT AND RECOMMENDATIONS

**THIS MATTER** is before the Court on Plaintiff Ramona Kemper's Motion for Summary Judgement (ECF No. 23) and Defendant Andrew Saul's, Commissioner of Social Security Administration, Motion for Summary Judgement (ECF No. 25). These Motions were referred to the undersigned United States Magistrate Judge by the Honorable Federico A. Moreno, United States District Judge, for a Report and Recommendation (ECF No. 2). Upon consideration of the briefing and the record, the undersigned **RECOMMENDS** that Plaintiff's Motion (ECF No. 23) be **DENIED** and Defendant's Motion (ECF No. 25) be **GRANTED**.

## I.    PROCEDURAL BACKGROUND

Plaintiff Ramona Kemper ("Plaintiff") appeals the Commissioner's denial of her claim for disability insurance benefits ("DIB"). Plaintiff filed her application for DIB on April 7, 2016, alleging an onset date of December 12, 2013 (R. 242-43). Following the denial of her claim at both the initial and reconsideration levels, Plaintiff requested an administrative hearing before an administrative law judge ("ALJ"). Plaintiff's request was granted, and a hearing was held on

1

February 5, 2018, before ALJ Norman Hemming (R. 23). At the hearing, Plaintiff was represented by counsel and both she and a Vocational Expert ("VE") testified at the hearing. On July 10, 2018, the ALJ issued his unfavorable decision finding that Plaintiff was not disabled at any point between her alleged onset date (December 12, 2013) through her date of last insured (March 31, 2016) (R. 23-32). Plaintiff appealed the ALJ's decision to the Appeals Council (R. 233), which accepted review of Plaintiff's appeal (R. 238). The Appeals Council affirmed the ALJ's decision with one revision: the Appeals Council extended the adjudicative period through September 30, 2016, a revised date of last insured (as opposed to March 31, 2016) (R. 238). Plaintiff now seeks judicial review of the ALJ's decision, and both Parties moved for summary judgment. Plaintiff has exhausted her administrative remedies, and, as such, this case is ripe for review under 42 U.S.C. § 1383(c).

## II.  STANDARD OF REVIEW

### A.  Legal Principles

A district court's review of the Commissioner's decision is limited to determining whether the decision as a whole is supported by substantial evidence in the record. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Substantial evidence is defined in this context as relevant evidence which a reasonable person would accept as adequate to support the conclusion reached. *Williams v. Astrue*, 416 Fed. App'x. 861, 862 (11th Cir. 2011). In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

If the Commissioner's decision is found to be supported by substantial evidence, then the reviewing court must affirm the decision, even if proof preponderates against it. *Dyer*, 395 F.3d at

1210. It is not the place of the reviewing court to reweigh the evidence or substitute its judgment for that of the Commissioner. *Id.* This restrictive standard of review set out above, however, applies only to findings of fact. No presumption of validity attaches to the conclusions of law found by the Commissioner, including the determination of the proper standard to be applied in reviewing claims. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). The failure by the Commissioner to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### B. Regulatory Framework

A claimant must be "disabled" to be eligible for social security benefits. 42 U.S.C. § 1382. A claimant is disabled if she is unable to "engage in any substantial activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A "physical or mental impairment" is one that "results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

A claimant bears the burden of proving that she is disabled. *Jones v. Apfel,* 190 F.3d 1224, 1228 (11th Cir. 1999); 20 C.F.R. §§ 404.1512(a), 416.912(a). The Social Security regulations outline a five-step sequential evaluation process for deciding whether a claimant is disabled: (1) whether she is currently engaged in substantial gainful activity; (2) whether she has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of a specified impairment in the Listing of Impairments; (4) whether she can perform her past relevant work despite her impairments; and (5) whether she can perform other work found in

the national economy. *Brightmon v. Soc. Sec. Admin., Comm'r*, 743 F. App'x 347, 351 (11th Cir. 2018); 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

## III.   THE RECORD

### 1.   Hearing Testimony

#### a.   Plaintiff's Testimony

Plaintiff was 52 at the time of the hearing and her highest level of education is ninth grade (R. 49). Plaintiff attended cosmetology school and worked as a hairstylist beginning in 2003 until 2015 (R. 44).

Plaintiff testified that was diagnosed with irritable bowel syndrome and diverticulitis in 2001 (R. 59). Since her diagnosis, Plaintiff has had two colon surgeries (*id.*). Plaintiff reports feeling weak and anemic, requiring her to receive iron supplements intravenously (R.61). Plaintiff also reports feeling severe pain, particularly on her left side (*id.*). Plaintiff experiences rectal bleeding and rheumatoid arthritis as a result of colitis (R. 62). Plaintiff suffers from gastrointestinal reflux disease ("GERD") (R. 64). Plaintiff reports that she uses the bathroom at least ten times per day (R. 86). Plaintiff is prescribed medicine for all of her reported impairments and reports that she has to follow a strict diet to curb symptoms (R. 64).

Plaintiff reports that she can drive and drives as far as 35 minutes from her home (R. 66). Plaintiff lives with her husband who shops for groceries and does most of the cooking (R. 67, 82). Plaintiff can walk up to five minutes without stopping and can stand for up to ten minutes without having to hold on to something (R. 69-70). Plaintiff can sit for up to ten minutes and then has to readjust (R. 71). Plaintiff is able to hold a pencil and write grocery lists for her husband (R. 83).

Plaintiff's condition has affected her ability to deal with the public in that she no longer loves to socialize, nor does she feel "happy-go-lucky" (R. 84). Plaintiff is also less patient with

4

herself and others, but reports that taking Lithium has helped her "a little bit" (R. 85). Plaintiff feels so depressed some days that she cannot get out of bed and barely leaves the house as a result of her condition (R. 72, 86).

### b.  Vocational Expert

Heidi Feder, VE, testified at the hearing (R. 87). The VE testified that Plaintiff's past relevant work is a hairstylist (*id*.). The ALJ asked the VE whether jobs existed for a hypothetical individual with Plaintiff's educational level, who was able to sit for a maximum of 20 minutes at a time, stand for at most 15 minutes at a time, and walk for up to 30 minutes at a time (the individual could adjust "from standing to sitting from sitting to walking" at any time) (R. 90). The VE testified that such an individual could work as a cashier, ticket seller, of office helper, all of which have a lower exertional level than her former employment as a hairstylist (R. 91-92).

The ALJ posed a second hypothetical asking the VE whether there were jobs for a hypothetical individual with the same physical limitations; and added environmental and mental limitations such as not working in cold temperatures, and limited exposure to coworkers and only occasional interaction with the public (R. 92). The VE testified that such a person could not be a cashier or ticket seller as those positions require more than occasional contact with the public (R. 93). However, such an individual could be an office helper or frame assembler (R. 93). If that same individual had to take up to 12 bathroom breaks, that person could not perform any jobs in the national economy (*id*.).

### c.  Function Report

On September 6, 2016, Plaintiff completed a function report in support of her application for DIB (R. 284-91). Plaintiff indicated that she could prepare her own meals and attempted to do chores as best she could (R. 286). Plaintiff reported that she was able to drive, use a checkbook,

and shop for groceries (R. 287). Plaintiff denied having difficulties with getting along with others and indicated that she had never been fired for conflicts in the workplace (R. 289). Plaintiff reported difficulties with lifting, walking, stair climbing, bending, standing, and sitting (*id.*). Plaintiff denied difficulties following written instructions, but requires instructions to be written otherwise she will forget (*id.*).

### 2. Summary of Medical Evidence

#### a. Jorge Castaneda, M.D.

Jorge Castaneda, M.D., treated Plaintiff for gastric symptoms from 2015 through 2016. Plaintiff presented to Dr. Castaneda for a gastroenterology consultation (R. 388-89). Plaintiff complained of abdominal pain, bloating, diarrhea, and heartburn (R. 388). Dr. Castaneda did not diagnose Plaintiff with any condition at that time but prescribed medicine to help with stomach pain (*id.*). Later that month, Dr. Castaneda diagnosed Plaintiff with diarrhea (R. 469-71). Plaintiff's condition remained unchanged in August 2015 (R. 468). In September 2015, Dr. Castaneda performed a colonoscopy which revealed generally normal results except an area of moderately congested mucosa in the colon (R. 475). Biopsies performed during the colonoscopy revealed mild polyps which were later removed (R. 487-92). In April 2016, Plaintiff reported bloating that occurred mainly at night and was moderate in severity (R. 455). Plaintiff's abdomen was normal and non-tender (R. 457). Dr. Castaneda diagnosed Plaintiff with GERD and flatulence pain and prescribed medicine to help with the resulting symptoms (*id.*)

#### b. American Care, Inc.

Plaintiff was treated at American Care, Inc., for her gastric problems from 2015 through 2016. She was predominantly treated by Yudisleidy Cayon, advanced registered nurse practitioner ("ARNP"). Plaintiff first presented to Ms. Cayon in April 2015 (R. 384-86). Ms. Cayon indicated

that Plaintiff had a history of gastric ulcers, flatulence, and generalized abdominal discomfort (R. 386). Plaintiff reported improvement of her symptoms in November 2015 and was not experiencing much pain (R. 382). Ms. Cayon indicated that Dr. Castaneda determined that there wasn't much to do about her condition, rather Plaintiff's symptoms should be routinely monitored (R. 381). In December 2015, Ms. Cayon diagnosed Plaintiff with diverticulitis and noted that upon exam of her abdomen, no pain was reported (R. 380).

In March 2016, Ms. Cayon evaluated Plaintiff for complaints of abdominal discomfort and occasional rectal bleeding (R. 377). Ms. Cayon noted that Plaintiff presented with a tender abdomen (R. 378). In May 2016, Plaintiff presented with reports of feeling tired and a sore throat (R. 515). Ms. Cayon reported that she felt a goiter in Plaintiff's thyroid and recommended a thyroid work-up panel (R. 516-17). The next month, Plaintiff returned with complaints of tiredness and Ms. Cayon diagnosed her with hypothyroidism (R. 514). In July 2016, Plaintiff retuned to Ms. Cayon and reported that she felt tired and that she was taking medication for her thyroid condition and had been referred to Dr. Tony Talebi and Dr. Mohammad Masri (R. 510).

### c.   Tony Talebi, M.D.

Dr. Tony Talebi treated Plaintiff for a thyroid condition from June 2016 through September 2016 (R. 545-551; 874-882). On June 15, 2016, Plaintiff first presented to Dr. Talebi for an oncology consultation due to complaints of her thyroid and swollen lymph nodes (R. 874-876). Dr. Talebi referred Plaintiff to Dr. Carlos Barrera and Dr. Masri (R. 876). One month later, Plaintiff returned to Dr. Talebi, who diagnosed Plaintiff with an enlarged thyroid gland with bilateral multinodular goiter with a dominant left nodule (R. 545). Dr. Talebi indicated that Plaintiff's reported fatigue was attributed to her chronic inflammatory state, including thyroiditis (R. 547). Plaintiff's diagnosis and fatigue remained unchanged in August and September 2016 (R. 550).

####    d.    Mohammad Masri, M.D.

Plaintiff was treated on a single occasion by general surgeon Dr. Mohammad Masri for follow up on her thyroid nodule (R. 2379-86). Dr. Masri removed the thyroid nodule (R. 2378). Dr. Masri noted that Plaintiff was negative for flatulence, pain, diarrhea, nausea, constipation, vomiting or rectal bleeding and her abdomen was normal (R. 2380, 2382).

####    e.    Carlos Barrera, M.D.

Plaintiff was evaluated on a single occasion by endocrinologist Carlos Barrera (R. 640). On June 28, 2016, Dr. Barrera reviewed her ultrasound results and concluded that no biopsy was necessary at the time and diagnosed Plaintiff with hypothyroidism (*id.*).

####    f.    Francisco Ricart, M.D.

Francisco Ricart, M.D, treated Plaintiff in 2015 through 2016 for psychiatric disorders. Plaintiff was first evaluated by Dr. Ricart for her complaints of depression in June 2015 (R. 504-06). Dr. Ricart completed an initial psychiatric evaluation form, in which he noted that Plaintiff appeared oriented and groomed and displayed a depressed and anxious mood (R. 505-06). Her thought process, concentration, memory, insight, and judgment were fair (R. 505). Plaintiff reported feeling depressed despite compliance with medicine, she lacked motivation to care for herself and work (*id.*). Dr. Ricart diagnosed Plaintiff with major depressive disorder and borderline personality disorder, with a fair prognosis (R. 505-06). Plaintiff returned to Dr. Ricart for progress evaluations on a monthly basis.

In July 2015, Plaintiff reported that she was depressed and felt unable to function, she reported that she had been stressed due to a financial crisis (R. 503). Dr. Ricart diagnosed Plaintiff with major depressive disorder and changed Plaintiff's medication. The next month, Plaintiff reported that she was still depressed although there had been improvement since she began the

new medication (R. 502). In December 2015, Plaintiff reported excess feelings of stress and racing thoughts, which Dr. Ricart noted was indicative of bipolar disorder II (R. 501). She was prescribed Lithium to ease her symptoms. In April 2016, Plaintiff reported improvement to her symptoms since stating Lithium (R. 497). Later in June 2016, Plaintiff reported crying spells and staying in bed all day (R. 643). Dr. Ricart noted that Lithium interfered with Plaintiff's thyroid issues and thus, discontinued the medicine until her thyroid was treated (*id*.).

### 3. ALJ's Decision

After reviewing the evidence and conducting the five-step inquiry, the ALJ determined that Plaintiff was not disabled within the meaning of the Act from the alleged onset date of December 12, 2013 through March 31, 2016, the date last insured, and thus denied her application for benefits (R. 31) The ALJ first determined that the Plaintiff met the insured status requirements of the Social Security Act though March 31, 2016[1] (R. 25). Plaintiff did not engage in substantial gainful activity from her alleged onset date through her date last insured (*id*.). The ALJ noted that Plaintiff worked after the alleged onset date but that such work activity did not rise to the level of substantial gainful activity (*id*.).

At step two, the ALJ determined that Plaintiff had the following severe impairments: diseases of the esophagus, inflammatory bowel disease, diverticulitis, and colitis (R. 25). The ALJ determined that although Plaintiff had been diagnosed with gastritis, that impairment is not severe for purposes of disability evaluation because there is "no evidence showing specific symptoms or signs related to the claimant's stomach lining during the period of adjudication" (R. 26). The ALJ found that with respect to Plaintiff's mental impairments of affective disorder and personality disorder, together or apart, did not cause more than a minimal limitation to Plaintiff's ability to

---

[1] On review, the Appeals Counsel extended this period through September 30, 2016.

perform basic mental work activities (*id*.).

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listings in 20 CFR Part 404, Subpart P, Appendix 1 (R. 27). The ALJ also found that Plaintiff had the residual functional capacity ("RFC") to perform a range of light work, with certain physical limitations, and was limited to simple, routine tasks (R. 28). At step four, the ALJ determined that given her RFC, Plaintiff could not perform her past relevant work as a hair stylist (R. 30).

At step five, the ALJ determined that considering the Plaintiff's age, education, work experience, and RFC, there were jobs that existed in the national economy which Plaintiff could perform, such as office helper, frames assembler, and marker (R. 30-31).

## IV.   ANALYSIS

Plaintiff argues that the ALJ committed reversible error in denying her application for benefits. The errors include the ALJ's failure to: (1) consider or properly assess medical opinion evidence in the record; (2) find that Plaintiff's impairments of gastritis and thyroid disorder were severe and should have been considered in the ALJ's RFC determination; and (3) assessing Plaintiff's symptoms and limitations.

In opposition, Defendant avers that Plaintiff has failed to identify what medical opinions, if any, the ALJ failed to consider or assign weight to and that any error was harmless because the ALJ considered symptoms of both in other parts of the opinion. Defendant also argues that the ALJ's RFC determination is supported by substantial evidence and that the ALJ properly assessed Plaintiff's objective complaints, particularly, where they were inconsistent with the medical record.

### 1.  ALJ's Determination of the Severity of Plaintiff's Impairments and RFC

Plaintiff argues that the ALJ erred at step two by finding that Plaintiff's gastritis was a non-severe impairment and by failing to consider at all Plaintiff's thyroid disorder, which contributed to Plaintiff's allegations of depression (ECF No. 23 at 9). Plaintiff contends that because of this error, the ALJ also failed to consider two severe impairments in his RFC determination (*id.*). In opposition, Defendant argues that any error at step two is harmless because the ALJ considered all of claimant's medically determinable impairments in other parts of the sequential analysis (ECF No. 25 at 14). Defendant also avers that although the ALJ did not specifically mention Plaintiff's thyroid disorder, he considered Plaintiff's depression, which Plaintiff alleged was caused, in part, by her thyroid disorder (*id.* at 16).

The finding of any severe impairment, whether or not it qualifies as a disability, is sufficient to satisfy the requirements at step two of the sequential evaluation process, thus, the ALJ does not err so long as an ALJ finds one severe impairment before proceeding to the remaining steps. *Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x 890, 891 (11th Cir. 2013). Any error in finding that an impairment is not severe is harmless if the ALJ considered and discussed the resulting symptoms alleged from those impairments elsewhere in the sequential process. *See Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 853 (11th Cir. 2013) (recognizing that the court need not consider whether the ALJ erred at step two with respect to severity of the plaintiff's cervical spine impairment because the ALJ found at least one severe impairment, and even if there was error, it would be harmless since in assessing the plaintiff's RFC, the ALJ  specifically considered and discussed the symptoms that she alleged stemmed from a cervical spine impairment elsewhere in the five-step sequential process).

### a. Gastritis

Here, although the ALJ found that Plaintiff's gastritis was not severe, the ALJ considered Plaintiff's general gastric issues in reaching his RFC determination (R. 28-29) and thus, any error by the ALJ at step two is harmless. *Packer*, 542 F. App'x at 891 (affirming the ALJ's finding at step two because the ALJ found at least one severe impairment and denying the plaintiff's argument that the ALJ erred in considering her alleged degenerative joint disease because the ALJ considered the plaintiff's musculoskeletal condition in general in other parts of the sequential analysis).

Plaintiff argues that the ALJ failed to consider several medical records demonstrating that Plaintiff's gastritis was severe. As a preliminary matter, the ALJ is not required to refer to every single piece of evidence in his opinion, so long as the ALJ's decision is not a broad rejection. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). Moreover, contrary to Plaintiff's argument, the ALJ cited several of those records cited in Plaintiff's Motion. For example, in considering Plaintiff's general gastric issues, the ALJ cited to a 2014 esophagogastroduodenoscopy, which showed Plaintiff had minimal esophagitis and mild erythema (R. 29, 480). The ALJ also considered that Plaintiff had been treated at the emergency room on several occasions for complaints of abdominal pain (R. 29). The ALJ cited medical records from treating sources that memorialized Plaintiff's reports of gastric symptoms such as abdominal pain, vomiting, rectal bleeding, diarrhea, general body aches, and fatigue, as well as her visits to the emergency (R. 29, 525-529, 565).

Ultimately, the ALJ determined that despite Plaintiff's chronic gastric issues, Plaintiff was not so impaired as a result to prevent her from working. In support of his finding, the ALJ noted Plaintiff had reported some improvement of the abdominal pain and that physical examinations

were generally normal, and that Plaintiff reported to Dr. Castenada being able to care for herself despite her impairments (R. 29, 459-61, 463-65). The ALJ also cited to relatively normal colonoscopies, the first of which identified mild polyps that were removed and a second, which was in the normal range except for congested mucosa; and the result of a biopsy of the colon tissue (benign) (R. 29, 475-76). Because the ALJ discussed Plaintiff's gastric issues as a whole and thoroughly reviewed the relevant medical evidence in reaching his RFC determination, reversal is not justified on this point.

### b. Thyroid Disorder

Plaintiff argues that the ALJ erred in failing to consider the medical impairment of Plaintiff's thyroid disorder. She claims that she suffers from a severe impairment of a thyroid disorder and that disorder contributes, in large part, to her fatigue and depression (ECF No. 21 at 10). In response, Defendant avers that although the ALJ did not expressly address Plaintiff's thyroid condition as a medical impairment, the ALJ did consider Plaintiff's reports of depression, and further argues that none of the medical records advanced by Plaintiff indicate that Plaintiff's thyroid condition caused greater mental limitations than those stated by the ALJ in his opinion (ECF No. 25 at 17-18).

At the hearing, Plaintiff's counsel agreed that her thyroid condition should be considered as a mental impairment and Plaintiff testified that the removal of her thyroid has caused her to feel depressed (R. 48). Indeed, when Plaintiff reported the condition as one causing disability, she indicated that her only symptom was exacerbation of her depression, which resulted in an increase in the dosage of depression medication (R. 303). Reversal is not recommended because even if the ALJ erred in not considering Plaintiff's thyroid condition at step two, the error was harmless as the ALJ assessed Plaintiff's reported symptoms of depression when considering Plaintiff's mental

impairments, any resulting limitations, and their impact on Plaintiff's RFC. *See Gray*, 550 F. App'x at 854.

The ALJ first determined that Plaintiff's mental impairments of affective disorder and personality disorder did not cause more than a minimal limitation in Plaintiff's ability to perform some work in the national economy (R. 26).[2] The ALJ noted that although Plaintiff consistently reported feeling depressed and lacking motivation to complete tasks, the medical evidence showed that she was not limited in the four areas of mental functioning and thus, did not affect her RFC (R. 27). The ALJ cited to medical evidence in support of his determination. The ALJ noted that on several occasions, Dr. Ricart indicated that Plaintiff appeared to be groomed and oriented, and displayed fair memory, concentration, insight, and judgment (R. 26-27, 497, 501-03, 643-47). The ALJ relied on Plaintiff's hearing testimony and Function Report for Plaintiff' statement that she can follow written instructions, cook, and drive without assistance (R. 26, 71, 286). The ALJ also considered that Plaintiff denied problems getting along with others and had not never been terminated due to conflict in the workplace (R. 289).

The ALJ's finding with respect to Plaintiff's medical impairments are further supported by the state consultant's findings that although Plaintiff reported depression, her symptoms are only mildly limited (R. 120). Because the ALJ discussed at length Plaintiff's reports of depression and supported his determination that Plaintiff's mental impairments did not limit Plaintiff from all RFC with substantial evidence, reversal is not recommended on this ground. *Newsome v. Barnhart*, 444 F. Supp. 2d 1195, 1201 (M.D. Ala. 2006) (stating that "[g]iven the ALJ's thorough discussion of

---

[2] Plaintiff challenges the ALJ's finding that her mental impairments were not severe on the grounds that the ALJ considered Dr. Ricart's notes "in passing" and ignored his treatment notes that indicated Plaintiff was significantly limited as a result of her mental impairments (ECF No. 23 at 12). Plaintiff has not identified any portion of Dr. Ricart's treatment notes that would support her averment of limitations as a result of her mental conditions. Moreover, a review of the opinion reveals that the ALJ did consider Dr. Ricart's treatment notes in reaching his determination that Plaintiff was not disabled.

the evidence in the record concerning plaintiff's oppositional behavior, the court finds that – to the extent that the ALJ erred in failing to make an explicit determination as to whether plaintiff's secondary diagnosis of ODD [Oppositional Defiant Disorder] constituted a severe impairment at step two of the sequential evaluation – the error was harmless").

To the extent the ALJ erred by failing to find Plaintiff's gastritis or thyroid condition severe impairments, the error is rendered harmless by the ALJ's thorough analysis of Plaintiff's gastric symptoms and depression in reaching an RFC determination.[3] For these reasons, I recommend that Plaintiff's Motion be denied on this ground.

### 2.   Failure to Assign Weight to Medical Opinions

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of the claimant's impairment(s), including the claimant's symptoms, diagnosis and prognosis, what the claimant can still do despite impairment(s), and the claimant's physical or mental restrictions." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178–79 (11th Cir. 2011) (citing 20 C.F.R. §§ 404.1527(a)(2)). Failure to "to state with particularity the weight he gave to each medical opinion" can constitute reversible error for it prohibits the court from determining "whether the ALJ's

---

[3] Plaintiff challenges the ALJ's RFC finding on the grounds that it is vague because it does not provide the maximum amounts of time Plaintiff can sit, stand, and or walk in an 8-hour work day. This argument is without merit. The ALJ's opinion indicates that Plaintiff can only perform light work (R.31), and thus, the ALJ was not required to state with particularity the frequency which Plaintiff could sit or stand. *See Kestler v. Astrue,* Case No. 2:10–cv–220–DNF, 2011 WL 4004898, at *11 (M.D.Fla. Sept. 9, 2011) ("Contrary to the [p]laintiff's argument, the ALJ was not required by [SSR 96–9p] to specify the exact frequency which the [p]laintiff needed to sit or stand. [SSR 96–9p] applies only in situations where an individual's RFC is limited to sedentary work."); *see also Hart v. Colvin*, No. 5:12CV156/EMT, 2013 WL 4736841, at *15 (N.D. Fla. Aug. 30, 2013). Moreover, the opinion relies heavily on the VE's testimony in response to the ALJ's hypothetical, which considered the following physical limitations: the individual could sit for a maximum of 20 minutes at a time, stand for at most 15 minutes at a time, and walk for up to 30 minutes at a time, but can shift her positions at any time within those maximum times (the individual could adjust "from standing to sitting from sitting to walking" at any time) (R. 90). Plaintiff neither challenges the hypothetical posed to the VE or the ALJ's reliance thereon.

conclusions about the medical opinions are supported by substantial evidence." *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 766 (11th Cir. 2014) (reversing the ALJ's decision, in part, because the ALJ failed to expressly assign weight to three medical opinions). Simply stating that the entire record was considered is insufficient. *Id.* at 766.

Plaintiff challenges the ALJ's failure to mention or assign particular weight, to the opinions of six treating doctors: Tony Talebi, Carlos Barrera, Francisco Ricart, Jorge Castaneda, Mohammad Masri, and Christina Marin (ECF No. 23 at 5). Plaintiff argues that the ALJ's silence as to the doctors' opinions or treatment notes makes it impossible for the Court to determine whether and to what extent the ALJ considered the medical evidence in the record (*id.* at 6).

In response, Defendant contends that Plaintiff's argument fails for two reasons: first, none of the doctors at issue advanced medical opinions as defined in 20 C.F.R. §§ 404.1527(a)(2). Defendant also argues that the Motion fails to identify any opinions or treatment notes, which if considered, undermine the ALJ's finding regarding Plaintiff's limitations, and thus, any error by the ALJ was harmless (ECF No. 25 at 10).

Plaintiff's Statement of Material Facts identifies a plethora of treatment notes, one initial evaluation form by Dr. Ricart, and a procedure report by Dr. Castaneda, all of which Plaintiff broadly defines as "medical opinions." The undersigned has reviewed each of the documents cited by Plaintiff to determine which, if any, contain statements that constitute medical opinions, and whether the ALJ erred in failing to consider them or assign it a particular weight.

The treatment notes cited by Plaintiff are not medical opinions that the ALJ was required to weigh. As noted above, "[m]edical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite

impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1). Although a physician's treatment notes can constitute medical opinions if they meet the above criteria, the notes here fail to meet that standard.

Here, the treatment notes identified by Plaintiff in her Statement of Facts refer to Plaintiff's diagnoses regarding her thyroid, gastric, and mental impairments but none of the treatment notes provide information as to prognosis, the severity of her impairments, or what Plaintiff can and cannot do as a result of her impairments. *See Rodriguez obo R.C. v. Saul*, No. 1:19-CV-22548-KMM, 2020 WL 6808814, at *7 (S.D. Fla. Aug. 18, 2020), *report and recommendation adopted in part*, No. 1:19-CV-22548-KMM, 2020 WL 5792596 (S.D. Fla. Sept. 29, 2020); *Manes v. Comm'r of Soc. Sec.*, No. 8:16-CV-3234-T-36JBT, 2018 WL 1832330, at *10 (M.D. Fla. Mar. 28, 2018). For example, Dr. Talebi's notes diagnose Plaintiff with a thyroid condition, which contributed to Plaintiff's fatigue; however the notes are silent as to Plaintiff's prognosis or limitations as a result of Plaintiff's thyroid condition (R. 547, 550). Likewise, Dr. Castaneda diagnosed Plaintiff with colitis, irritable bowel disorder, lactose intolerance, celiac disease, and GERD (R. 462-65, 455-58). However, apart from those diagnoses, the treatment notes do not indicate any limitations resulting from those conditions or Plaintiff's prognosis. Dr. Marin diagnosed Plaintiff with Crohn's disease but does not indicate if that diagnosis caused any limitations or the severity of her condition (R. 2482).

Similarly, with respect to Plaintiff's thyroid and gastric conditions, Plaintiff advances Dr. Masri and Dr. Barrera's treatment notes. In his notes, Dr. Masri indicated that Plaintiff had bilateral lymphadenopathy and a left thyroid nodule and recommended a biopsy of the left thyroid (R. 2384). However, the notes are silent as to her prognosis, symptoms, or resulting limitations. Dr. Barrera's treatment note identifies some symptoms such as fatigue, depression, and abdominal

pain, but does not opine on Plaintiff's prognosis, severity of impairments, or limitations resulting therefrom (R. 640).

With respect to Plaintiff's mental impairments, Dr. Ricart diagnosed Plaintiff with major depressive disorder, borderline personality disorder, and bipolar II disorder (R. 497-503). Dr. Ricart's progress notes provide no opinion as to Plaintiff's prognosis or limitations caused by her conditions. The progress notes largely memorialize Plaintiff's response to medication, but do not discuss her limitations. *Rodriguez*, 2020 WL 6808814, at *7.  For these reasons, none of the treatment notes identified by Plaintiff constitute medical opinions which the ALJ had to accord particular weight.

 Nor does Dr. Ricart's initial psychiatric evaluation form contain any medical opinions the ALJ should have considered and weighed. The evaluation form memorializes Plaintiff's medical and reported symptoms of depressions, anxiety, crying spells, lack of motivation to care for herself, and decreased concentration (R. 504). The form indicates Dr. Ricart's diagnosis of major depressive disorder and borderline personality disorder and states that Plaintiff has a fair prognosis (*id*.). Although the form completed by Dr. Ricart does mention Plaintiff's diagnosis and prognosis, this is insufficient to constitute a medical opinion because the form does not explain the nature and severity of Plaintiff's condition or her abilities and restrictions, including what she can still do despite her diagnosis. *Romero v. Comm'r of Soc. Sec.*, 752 F. App'x 906, 908 (11th Cir. 2018) (holding that the ALJ did not err in failing to consider certain medical records because they did not constitute medical opinions because they did not reflect what activities the claimant could or could not perform); *see also Rodriguez*, 2020 WL 6808814, at *7.

Finally, the procedure report completed by Dr. Castaneda does not constitute a medical opinion as it solely summarizes the findings of Plaintiff's colonoscopy and does not provide a

diagnosis, prognosis, or description of Plaintiff's limitations (R. 475).

Moreover, Plaintiff's reliance on *Winschel* is misplaced. In that case, the claimant argued that the ALJ committed reversible error with respect to the treatment of medical opinions at the fourth and fifth steps of the sequential evaluation process. *Winschel*, 631 F.3d at 1178. The parties disagreed as to whether a treating physician's treatment notes constituted a medical opinion. *Id*. at 1179. The Eleventh Circuit explained that because the notes included a description of the claimant's symptoms, a diagnosis, and a judgment about the severity of his impairments, the notes constituted a medical opinion. *Id*. Because the ALJ did not reference the treating physician's medical opinion, the Court could not determine whether his opinion was considered and rejected, or not considered at all, and thus, reversed and remanded the ALJ's decision. *Id*. *Winschel* does not bolster Plaintiff's position because none of the records cited by Plaintiff constitute medical opinions because they fail to provide a judgment about Plaintiff's impairments or any limitations resulting therefrom. For these reasons, I find no error in the ALJ's treatment of the medical records cited by Plaintiff.

### 3. Plaintiff's Alleged Symptoms

In his opinion, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms she claims, however, the ALJ found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence in the record (R. 29). Plaintiff challenges the ALJ's determination arguing that the ALJ erred in assessing Plaintiff's subjective complaints (ECF No. 23 at 14). Defendant in opposition cites to records relied on by the ALJ, which are inconsistent with Plaintiff's subjective complaints, and notes that Plaintiff's Motion does not challenge the ALJ's reliance on any of those records or argues that the ALJ did not

consider other records, rather only summarizes Plaintiff's subjective complaints (ECF No. 25 at 21).

Subjective complaints are evaluated under a three-part "pain standard" under which the claimant must show: (1) objective medical evidence of an underlying medical condition; and either (2) the objective medical evidence substantiates the severity of the pain from the condition; or (3) the objectively determined medical condition is of sufficient severity that it would reasonably be expected to produce the pain alleged. *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986). "If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so." *Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995). If such reasons are not given, then the claimant's subjective pain testimony must be accepted as true. *Id.* at 1562 (citing *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988)). However, "[a] clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Id.*

Plaintiff makes no argument that the ALJ erred in finding that Plaintiff's complaints regarding the severity of her pain were not entirely consistent with medical evidence in the record. Instead, Plaintiff argues only that her subjective complaints have been consistent from the time she applied for benefits to her testimony at the hearing. However, that is not the pertinent question here; rather, the Court must determine whether the ALJ's finding that Plaintiff's complaints were not entirely credible is supported by substantial evidence. I find that it is.

After review of the evidence, the ALJ determined that although Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, the Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence in the record (R. 29). The ALJ first noted

that only a part of the record contained evidence relevant to the time period at issue (*id*.).  The medical records within the relevant time period demonstrated a history of gastrointestinal issues with complaints of abdominal pain, rectal bleeding, general body aches, nausea, vomiting, diarrhea, and fatigue, which resulted in Plaintiff presenting to the emergency room on several occasions (R. 29). The ALJ determined that despite Plaintiff's subjective complaints regarding her pain and depression, the severity of those symptoms was not entirely consistent with medical testing that revealed relatively mild to moderate results (*id*.). For example, a colonoscopy performed in December 2014 revealed small polyps, which were removed (R. 475) and an endoscopy revealed gastroparesis and mild gastritis (R. 480). The ALJ also noted that a CT scan performed in August 2015 showed mild diverticulitis and a separate gastric test yielded normal results (R. 29, 482, 565).  The ALJ also cited to the results of a September 2015 colonoscopy, which was generally normal except for moderately congested mucosa (a biopsy of which was benign) (R. 29, 475). Because the ALJ articulated his reasons for partially discounting the claimant's subjective symptoms and the ALJ's determination is supported by substantial evidence, reversal is not warranted under the circumstances.

## V.    RECOMMENDATIONS

The undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment (ECF No. 23) be **DENIED**, and Defendant's Motion for Summary Judgment (ECF No. 25) be **GRANTED**, and that the ALJ's decision be **AFFIRMED.**

A party shall serve and file written objections, if any, to this Report and Recommendation with Federico A. Moreno, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything

in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

**RESPECTFULLY SUBMITTED** this 4th day of January, 2021, in Miami, Florida.

_____
**LAUREN F. LOUIS**
**UNITED STATES MAGISTRATE JUDGE**